Case 1:19-cv-00051   Document 23   Filed on 10/03/19 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
October 03, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:19-cv-51 |
| | § | |
| BIKERS HOUSE BAR AND | § | |
| GRILLE, LLC, et al., | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On March 24, 2019, Plaintiff J&J Sports Productions, Inc. ("J&J Sports") filed a complaint against Defendants Bikers House Bar and Grille, LLC ("Bikers House"), Aaron Garza ("Garza"), and Filiberto Garza Jr. ("Garza Jr."). Dkt. No. 1.  The crux of the complaint is that the Defendants illegally showed a pay-per-view boxing match at their establishment without paying the required licensing fee.

On September 2, 2019, J&J Sports filed a motion for default judgment against all of the Defendants. Dkt. No. 14.  None of the Defendants have responded to that motion.  The motion is currently pending before the Court.

None of the Defendants have appeared, or in any way defended their actions, in this case.  Moreover, J&J Sports has demonstrated all of the elements to state a claim to relief.  Thus, the Court recommends that the motion for default judgment be granted against all of the Defendants.

**I. Background**

**A. Factual Background**

On April 9, 2016, a boxing match, identified as "Manny Pacquiao v. Timothy Bradley Jr. WBO Welterweight Championship Fight Program" – as well as the undercard boxing matches ("the event") – was broadcast via closed circuit television and encrypted satellite signal. Dkt. No. 1, p. 4.  The event's rights had contractually been acquired by J&J Sports, who held the exclusive right to distribute the broadcast. Id.  J&J Sports then entered

1

into agreements with various entities in Texas allowing them to publicly exhibit the event to their patrons in exchange for payment. Id, pp. 4-5.  The event's signal was electronically coded or scrambled to safeguard against the unauthorized interception and exhibition of the event; the intended recipient establishments were provided with decoding equipment and the satellite coordinates necessary to retrieve it. Id.

Based upon the affidavit of an investigator hired by J&J Sports, on the night of the broadcast, Bikers House was broadcasting the event on two televisions. Dkt. No. 14-1, p. 21-22.  The investigator counted between six and eight patrons present at various times throughout the evening. Id.

An attorney for J&J Sports – who is not representing J&J Sports in this case – provided an affidavit stating that Bikers House did not lawfully obtain a license for the event from J&J Sports. Dkt. No. 14-1, pp. 7-8.

Moreover, according to the affidavit, the programming cannot be mistakenly, innocently, or accidentally intercepted. Dkt. No. 14-1, p. 8.  The affidavit identified various methods that have been used to unlawfully intercept the signal and included things "such as using an unauthorized decoder or satellite access card, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the event into the establishment, or moving an authorized decoder or satellite card from its authorized location to the commercial establishment." Id.

In the complaint, J&J Sports states that both Garza and Garza Jr. were an "owner and/or manager" of the bar; were "officer[s] and/or owner[s]" of Bikers House; "had a right and ability to supervise the activities" of the bar; and, had "an obvious and direct financial interest in the activities" of the bar. Dkt. No. 1, pp. 2-3.

**B. Procedural Background**

On March 24, 2019, J&J Sports filed a complaint against the Defendants seeking judgment for violations of the Federal Communications Act, ("FCA"). Dkt. No. 1, p. 5. The complaint alleges that the Defendants violated either 47 U.S.C. § 553 or 47 U.S.C. § 605.  Section 553 prohibits the unauthorized reception, interception, and exhibition of any communications service offered over a cable system.   Section 605 prohibits the

unauthorized reception and publication or use of communications such as the one in this case, to which J&J Sports held the distribution rights.

In the complaint, J&J Sports sought statutory penalties against each defendant; up to the maximum amount of $110,000.00 for willful violation of 47 U.S.C. § 605; and, up to the maximum amount of $60,000.00 for willful violation of 47 U.S.C. § 553. Dkt. No. 1, p. 6.  Lastly, J&J Sports sought attorneys' fees as well as pre- and post-judgment interest as to each defendant.[1] Id.

The complaint alleges that Garza and Garza Jr. each "held the license/permit issued by the Texas Alcoholic Beverage Commission for" Bikers House. Dkt. No. 1, pp. 2-3.

On April 16, 2019, Garza Jr. was served with the complaint via hand-delivered personal service. Dkt. No. 7.  On April 24, 2019, Garza was similarly served. Dkt. No. 6.

On July 8, 2019, the Court ordered J&J Sports to show cause as to why service had not been timely effectuated on Bikers House. Dkt. No. 5.

On July 29, 2019, J&J Sports filed a response to the show cause order, noting that it had unsuccessfully attempted to serve the registered agent. Dkt. No. 8.  On that same day, the Court noted that there was good cause to extend the deadline to serve Bikers House, given the good faith efforts by J&J Sports. Dkt. No. 9.

Also, on July 29, 2019, J&J Sports filed a motion to authorize substitute service on Bikers House, noting that it had not been able to find the registered agent for Bikers House at its registered office. Dkt. No. 9.  J&J Sports sought the Court's permission to serve Bikers House via the Texas Secretary of State. Id.  On July 30, 2019, the Court granted the motion, permitting J&J Sports to serve Bikers House via service on the Texas Secretary of State. Dkt. No. 11.

On August 2, 2019, J&J Sports served the Texas Secretary of State. Dkt. No. 12, p. 2.  On August 5, 2019, the Texas Secretary of State served Bikers House. Id.  This action constituted proper service on Bikers House under Texas law. TEX. BUS. ORG. CODE § 5.251(1)(B).

---

[1] Post-judgment interest is automatically assessed to judgments, pursuant to 28 U.S.C. § 1961(a).

No pleadings were ever filed by any of the Defendants.

On September 2, 2019, J&J Sports filed a request for entry of default against all of the Defendants. Dkt. No. 13. The District Clerk's Office filed entries of default against the defendants on that same day. Dkt. No. 15.

Also, on September 2, 2019, J&J Sports filed a motion for default judgment against all of the Defendants. Dkt. No. 14, p. 11. That is the motion pending before the Court. While the complaint sought pre-judgment interest, the motion for default judgment did not. Id. Accordingly, the Court should decline to award it. Sanchez v. Bank of Am., N.A., No. 4:12CV615-RAS-DDB, 2013 WL 6116690, at *2 n. 1 (E.D. Tex. Nov. 20, 2013) (claim raised in a complaint, but not sought in motion for default judgment is "considered abandoned").

## II. Applicable Law

### A. Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After a defendant has defaulted, judgment shall be entered upon affidavit of the amount due if the plaintiff's claim is for a sum certain or a sum that can be made certain by computation. FED. R. CIV. P. 55(b). The plaintiff must also file an affidavit stating whether the defendant is in military service before the Court can issue a default judgment. 50 App. U.S.C. § 521.

Default judgments "are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." Flores v. Select Energy Servs., LLC, 486 Fed. App'x. 429, 432 (5th Cir. 2012) (unpubl.) (citing Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001)). Moreover, plaintiffs are "not entitled to a default judgment as a matter of right, even where the defendant is technically in default." Settlement Funding, LLC. v. TransAmerica Occidental Life Ins. Co., 55 F.3d 422, 424 (5th Cir. 2009).

"In order to properly resolve [plaintiff's] motion, the Court must determine: (1) whether default judgment is procedurally warranted; (2) whether [the plaintiff's] complaint sufficiently sets forth facts establishing that [he] is entitled to relief; and (3) what form of

4

relief, if any, [the plaintiff] should receive." U.S. v. Giles, 538 F. Supp. 2d 990, 993 (W.D. Tex. 2008). After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true. U.S. *ex rel.* M-Co Constr., Inc. v. Shipco Gen., Inc., 814 F.2d 1011, 1014 (5th Cir. 1987).

Moreover, under Rule 55(b), the Court has discretion to convene an evidentiary hearing on the issue of damages. Fed. R. Civ. P. 55(b)(2). As a rule, courts should hold evidentiary hearings to determine unliquidated damages; however, there is an exception to this rule where damages are capable of mathematical calculation. J&J Sports Productions, Inc. v. Kuo, 2007 WL 4116209, *2 (W.D.T.X. 2007) (unpubl.) (citing James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993)).

### B. Violations of the Federal Communications Act

Sections 605 and 553 of the Federal Communications Act govern the unauthorized exhibition of intercepted transmissions. The unauthorized reception and publication or use of any wire or radio communications is prohibited under 47 U.S.C. § 605, which provides:

> (a) . . .No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605.

In a similar fashion, 47 U.S.C. § 553 governs the unauthorized reception of cable service. In relevant part, this section reads:

> (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)

On its face, the FCA is a strict liability statute. Joe Hand Promotions, Inc. v. Macias, 2012 WL 950157, *2, (S.D.T.X. 2012) (unpubl.) (citing KingVision Pay-Per-View, Ltd. v. Lake Alice Bar, 168 F.3d 347, 349 (9th Cir. 1999)). Accordingly, to establish liability

5

under either section, all the plaintiff must prove is "the unauthorized exhibition of the intercepted transmission." Id.

Sections 605 and 553 overlap considerably in their coverage. For this reason, several courts have held that the unauthorized interception and broadcast of either satellite or cable transmissions violates both. Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc., 219 F. Supp. 2d 769, 774 (S.D.T.X. 2002) (collecting cases).

While the Fifth Circuit has yet to address whether a claim can be brought under both provisions, the majority of courts that have considered violations of both sections have awarded damages only under § 605, because that section allows for greater recovery by plaintiffs. Id. at 774-75 (collecting cases). Moreover, recovery is generally not allowed for violations of both provisions. J&J Sports Productions, Inc. v. Garcia, 2009 WL 2567891, *4 (S.D.T.X. 2009) (unpubl.) (citing Al-Waha Enterprises, 219 F. Supp. 2d at 775).

"In Texas, courts have extended liability to the holder of an establishment's liquor license, by virtue of the statutory requirement that the holder have exclusive occupancy and control over the entire licensed premises, unless granted an exemption." J&J Sports Prods., Inc. v. Lizard Ventures, LLC, No. 7:16-CV-663, 2017 WL 7052233, at *2 (S.D. Tex. Dec. 4, 2017). The state statute provides that if an individual holds a liquor license in Texas, he "shall have and maintain exclusive occupancy and control of the entire licensed premises . . . ." TEX. ALCO. BEV. CODE § 109.53. Thus, the holder of a liquor license may be held individually liable for any unauthorized and illegal broadcasting of a sporting event on the premises. Joe Hand Promotions, Inc. v. Roberson Mgmt., Inc., No. CIV A. H-05-3797, 2006 WL 2346308, at *1 (S.D. Tex. Aug. 11, 2006).

**III. Analysis**

J&J Sports has sought default judgment against Bikers House, Garza, and Garza Jr. Dkt. No. 14. The Court will first consider whether such judgment is warranted against Bikers House, then against the individual defendants. Because the Court recommends that defendants be held liable for the claimed violations, the Court then turns to the question of the amount of damages that should be awarded.

### A. Bikers House

Default judgment against Bikers House is appropriate in this case. Representatives for Bikers House have "failed to plead or otherwise defend" – in any fashion – Bikers House in this matter, despite being properly served. Dkt. No. 12. The District Clerk's Office has filed an entry of default. Dkt. No. 15. The Court waited at least 21 days after the motion for default judgment was filed, and a representative for Bikers House has still failed to enter an appearance.

Furthermore, J&J Sports has sufficiently set forth facts entitling it to relief against Bikers House. To find Bikers House liable under the FCA, all J&J Sports must do is demonstrate that the establishment broadcasted the event; that J&J Sports had the exclusive proprietary right to exhibit and sub-license the exhibition of the event to closed-circuit locations; and, that the establishment did not obtain authorization from J&J Sports to display the event. Al-Waha Enterprises, 219 F. Supp. 2d at 775.

J&J Sports has established that on April 9, 2016, Bikers House was exhibiting the event on two televisions with fewer than 10 patrons in attendance. Dkt. No. 14-1, pp. 21-22. J&J Sports has also established that it had acquired the exclusive right to distribute the event, Dkt. No. 14-1, pp. 13-19, and that Bikers House did not have authorization from J&J Sports to exhibit the event. Dkt. No. 14-1, pp. 7-8.

Bikers House has not attempted to dispute any of these facts. See U.S. v. Lawrence, 276 F.3d 193, 196 (5th Cir. 2001) (Because no party disputes the competency of the evidence, it may be relied upon for entry of default judgment). Based upon these facts, J&J Sports has – without challenge – alleged all of the elements to succeed in an action under the Federal Communications Act. Thus, J&J Sports is entitled to a default judgment against Bikers House.

### B. Individual Defendants

Default judgment is also warranted for the claims made against Garza and Garza Jr. Both individual defendants have "failed to plead or otherwise defend" Bikers House in this matter, despite being properly served. Dkt. Nos. 6, 7. Accordingly, the District Clerk's Office filed an entry of default. Dkt. No. 15. As noted before, the Court waited at least 21

days after the motion for default judgment was filed, but neither individual defendant has entered an appearance.

Furthermore, J&J Sports has sufficiently set forth facts entitling it to relief against Garza and Garza Jr. J&J Sports has pled that Garza and Garza Jr. were each holders of the liquor license for the establishment. Dkt. No. 1. As the holder of an establishment's liquor license, both may be held liable for the unauthorized broadcasting of the event because, by law, they have complete control of the premises. Lizard Ventures, LLC, 2017 WL 7052233, at *2. As previously noted, the holder of a Texas liquor license has the absolute right to supervise and control "the entire licensed premises." TEX. ALCO. BEV. CODE § 109.53. Thus, the holder of a liquor license may be held individually liable for any unauthorized and illegal broadcasting of a sporting event on the premises. Roberson Mgmt., Inc., 2006 WL 2346308, at *1. Moreover, neither individual defendant has attempted to dispute any of these facts, which renders them a proper basis for default judgment. Lawrence, 276 F.3d at 196.

Additionally, J&J Sports has filed evidence showing that neither Garza nor Garza Jr. is in military service, satisfying the Servicemembers Civil Relief Act. Dkt. No. 14-1, pp. 43-46.

Accordingly, J&J Sports has pled all of the elements to succeed in an action under the Federal Communications Act. For that reason, J&J Sports is entitled to a default judgment against Garza and Garza Jr.

**C. Damages**

In the motion for default judgment, J&J Sports requests damages under either 47 U.S.C. § 553 or § 605. Dkt. No. 14, p. 2. As earlier mentioned, courts most often choose to award damages under § 605 only. Al-Waha Enterprises, 219 F. Supp. 2d at 774. In the instant case that appears appropriate, given that § 605 "allows for greater recovery by plaintiffs." Id. For that reason, the Court will assess damages only as provided by § 605. Those damages are assessed in favor of J&J Sports Productions and jointly and severally against Bikers House, Aaron Garza and Filiberto Garza Jr.

Under § 605, plaintiffs are entitled to choose between actual damages and statutory damages. 47 U.S.C. § 605(e)(3)(C)(I). J&J Sports requests statutory damages of $10,000 and additional damages of $50,000 on the grounds that defendants' actions were willful and were undertaken for purposes of direct or indirect commercial advantage or private financial gain. Dkt. No. 14, p. 9. Additionally, J&J Sports requests an award of costs and attorneys' fees.

As a preliminary matter, the Court notes that it has the discretion to hold an evidentiary hearing to determine the quantum of damages. FED. R. CIV. P. 55(b)(2). In this case, though, the damages are easily calculable from the affidavits submitted by J&J Sports. Dkt. No. 14-1. Thus, an evidentiary hearing to determine damages is unnecessary. Kuo, WL 4116209 at *2.

For the reasons set forth below, damages are warranted in the total amount of $13,200, including costs and attorneys' fees, to be paid to J&J Sports by Bikers House, Garza and Garza Jr., all of whom are jointly and severally liable.

### 1. Statutory Damages

For each violation of § 605(a), statutory damages may be awarded to plaintiffs in a "sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). J&J Sports requests the maximum amount of $10,000. Dkt. No. 14, p. 7. There are a variety of ways that District Courts have calculated statutory damages. Here, the Court recommends looking at what the defendants would have had to pay to comply with the law and trebling that amount.

In approaching these types of cases, District Courts in Texas have employed several methods to calculate damages. Their approaches can generally be divided into two categories: 1) calculating damage awards based upon the number of patrons in the establishment at the time; or 2) awarding a flat sum for damages. Kuo, WL 4116209 at *4 (citing Time Warner Cable v. Taco Rapido Restaurant, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (collecting cases)).

Courts using the first method typically multiply the number of patrons in the establishment by either the residential pay-per-view rate or a court-determined amount. In

9

Kuo, the Court multiplied the number of patrons by the cost of the residential pay per view rate of $54.95. Kuo, WL 4116209 at *4. Here, however, no one has provided any evidence of the residential pay-per-view rate for the event on April 9, 2010. As an alternative, the Court can multiply the number of patrons by a "reasonable amount," such as $50. Joe Hand Promotions, Inc. v. Mariscal, 1:08-cv-00188, *7 (S.D.T.X. Jul. 01, 2009) (unpubl.) (citing Top Rank, Inc. v. Tacos Mexicanos, WL 21143072, 5 (E.D.N.Y. Mar. 28, 2003)).

In employing the second approach – that is, awarding a flat sum – courts typically look at factors such as whether defendants are repeat offenders, or the cost of complying with the law.

In this instance, the Court employs the approach of looking at what the cost of complying with the law would have been and multiplying that cost by some factor to cover damages to the plaintiff. Joe Hand Promotions, Inc. v. Garcia, 546 F. Supp. 2d 383, 386 (W.D.T.X. 2008) (unpubl.) (Multiplying the cost to purchase the viewing rights, $875, times three). Trebling the cost "accounts for the money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." Id.

J&J Sports's pricing list, for commercial venues of a similar size, establishes that the amount Bikers House would have been required to pay, to show the event, would have been $2,000. Dkt. No. 14-1, p. 22 (Bikers House had a capacity seating of 40 people); Dkt. No. 14-1, p. 27 ($2,000 purchase price for establishments with a capacity of 100 or less). Trebling damages is warranted in this case; the resulting amount being the cost to show the event ($2,000) times three, for a total of $6,000. Accordingly, the Court should assess statutory damages, jointly and severally, against Bikers House, Garza and Garza Jr. in the amount of $6,000.

### 2. Willfulness

Additionally, plaintiffs may recover additional damages of "not more than $100,000 for each violation of § 605(a)," if the Court finds that the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). J&J Sports seeks $50,000 in additional damages. Dkt.

No. 14, p. 9. The Court recommends that the willfulness damages be assessed at $6,000 — the same as the statutory damages — because it is extremely unlikely that the signal was accidentally intercepted. The most reasonable inference is that the defendants willfully and deliberately intercepted the broadcast by illegal means.

While the term "willfully" is not defined by the statute, the Supreme Court has identified willfulness as a "disregard for the governing statute and an indifference for its requirements." Al-Waha Enterprises, 219 F. Supp. 2d at 776-77 (citing Cable Systems N.Y. City Corp. v. Lokshin, 980 F.Supp. 107, 114 (E.D.N.Y. 1997) (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27 (1985))). J&J Sports has not offered any direct evidence that the defendants acted willfully, but rather relies on the affidavit of its attorney to demonstrate the difficulty of accidentally intercepting the encrypted signal. Dkt. No. 14-1, p. 7-9.

"Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as [intercepting unauthorized signals] to be willful and for the purposes of direct or indirect commercial advantage or private financial gain." Al-Waha Enterprises, 219 F. Supp. 2d at 776. When the Court pairs the "extreme unlikelihood that the defendant could inadvertently have acquired the signal" and the defendant's "failure to file [an] answer denying... allegations on this issue," it may find that the violation was "committed willfully and for purposes of direct or indirect commercial advantage." Garcia, 546 F. Supp. 2d at 386. Accordingly, the Court recommends that damages be paid to J&J Sports.

To calculate the amount of damages, courts typically multiply the original damages amount by some factor. Garden City Boxing Club, Inc. v. Sacks, WL 1711478, *3 (S.D.T.X. 2008) (unpubl.). A number of things are considered in determining the appropriate multiplier. See Kuo, WL 4116209 at *5 (whether the defendants were repeat offenders; whether they charged a cover charge; whether they charged a premium for their food); Mariscal, 1:08-cv-00188 at *7 (whether the defendants were repeat offenders; the

11

number of patrons who viewed the event; whether they advertised or charged a cover price).

Here, there is no evidence of a cover charge, or that food prices were inflated for the event, or that there was any advertising for the event. J&J Sports's investigator states that he did not pay a cover charge to attend and that fewer than 10 people were present. Dkt. No. 14-1, pp. 21-22.

The Court must also consider that the purpose of this section is to deter future violations – not to destroy the defendants' business. Kuo, WL 4116209 at *5. Given the lack of a cover charge and the paucity of patrons in this case, the Court must be careful to ensure that any damages are not excessive. In this case, the Court finds that assessing willfulness damages in the same amount as the statutory damages ensures that the defendants have "entirely disgorged their profits derived from illegally intercepting and broadcasting," the event, Id., without leaving the defendants insolvent. Because the Court finds that the violation was willful, it should assess an additional $6,000 in willfulness damages, in addition to the statutory damages.

### 3. Attorneys' fees

The statutory language for § 605 mandates that the court direct the recovery of full costs, including reasonable attorneys' fees to the prevailing plaintiff. 47 U.S.C. § 605(e)(3)(B)(iii). J&J Sports requests an award for attorneys' fees based on a contingency fee of 33% of the damages award. Dkt. No. 14-1, p. 32. That award would total $4,000. Alternatively, in his affidavit, J&J Sports's counsel requests attorneys' fees based upon a "Lodestar fee" calculation in the amount of $3,250. Id. at 33. Because it would be more reasonable under the facts presented here, the Court recommends the "Lodestar" approach, but not the requested amount.

The contingency fee approach is unreasonable and inappropriate when applied to this case. The evidence provided by J&J Sports's counsel establishes that J&J Sports's attorneys expended only four hours on this case. An award of $4,000 appears excessive, given both the nature and level of original effort required by this case. Thus, the Court should not employ the contingency fee approach.

By contrast, the "Lodestar method" seems reasonable and appropriate in the instant case. Sacks, WL 1711478 at *3; Mariscal, 1:08-cv-00188 at *10. Evidence provided by J&J Sports established that $300 per hour is a reasonable fee and that four hours were expended on this case. Dkt. No. 14-1, p. 34. Therefore, the Court recommends an award of $1,200 in attorneys' fees.

J&J Sports has also sought attorney's fees for possible future events, such as the Defendants appealing this case to the Fifth Circuit or Supreme Court. Dkt. No. 14-1, pp. 34-35. The Court should decline to award contingent attorney's fees and costs for possible future events. J&J Sports "may apply for such an award if and when such fees and costs are incurred." Sacks, WL 1711478 at *3 (quoting Nat'l Satellite Sports, Inc. v. Carmen-Garcia, No. 3:01-CV-1799-D, LEXIS 10315, *7 (N.D. Tex. 2003)).

**IV. Recommendation**

It is recommended that the motion for default judgment be granted. Dkt. No. 14.

It is further recommended that judgment be entered in favor of J&J Sports Productions, Inc., and against Bikers House Bar and Grille, LLC, Aaron Garza, and Filiberto Garza, Jr. The judgment should be entered in the total amount of $13,200, which is broken down as follows:

— Statutory damages, under 47 U.S.C. § 605(e)(3)(C)(i)(II), of $6,000.

— Willfulness damages, under 47 U.S.C. § 605(e)(3)(C)(ii), of $6,000.

— Attorney's Fees, under 47 U.S.C. § 605(e)(3)(B)(iii), of $1,200.

Post judgment interest should also be ordered, in accordance with 28 U.S.C. § 1961(a).

Bikers House Bar and Grille, LLC, Aaron Garza, and Filiberto Garza, Jr shall be held jointly and severally liable for the entire amount of the judgment.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge

is not required to consider frivolous, conclusive, or general objections. <u>Battle v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a <u>de novo</u> review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a <u>de novo</u> review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on October 3, 2019.

_____
Ronald G. Morgan
United States Magistrate Judge